# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

ALBERT THOMAS LOWE,       )
      Plaintiff,           )
                      )
      v.                )     CAUSE NO.: 2:12-CV-524-PRC
                      )
CAROLYN W. COLVIN,       )
Acting Commissioner of the     )
Social Security Administration,   )
      Defendant.         )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Albert Thomas Lowe on December 17, 2012, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], filed on January 6, 2014. Plaintiff requests that the July 29, 2011 decision of the Administrative Law Judge denying his claims for disability insurance benefits be reversed and remanded for further proceedings. On April 8, 2014, the Commissioner filed a response, and Plaintiff filed a reply on May 6, 2014. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff Albert Thomas Lowe suffers neck and back pain that he alleges prevents him from sitting or standing for more than ten to fifteen minutes in one place. He also alleges constant leg pain and numbness and that he can barely feel his feet. Back surgery improved his ability to walk but did not eliminate his problems with sitting and standing for a period of time and walking on uneven ground. Carpal tunnel syndrome in both wrists, left worse than right, impairs his ability to use his hands, and Plaintiff suffers from chronic obstructive pulmonary disease. Plaintiff also asserts that he has problems with concentration due to his medications.

On August 25, 2009, Plaintiff filed an application for disability insurance benefits, alleging an onset date of December 15, 2008. Plaintiff later amended his onset date to December 15, 2007. The application was denied initially on January 21, 2010, and upon reconsideration on May 17, 2010. Plaintiff filed a timely request for a hearing on May 27, 2010, which was held on April 27, 2011, before Administrative Law Judge ("ALJ") Curt Marceille. In appearance were Plaintiff, his attorney Anne Knight, and vocational expert Randall L. Harding. The ALJ issued a written decision denying benefits on July 29, 2011, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since December 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: status post lumbar fusion, cervical spine impairment, carpal tunnel syndrome and chronic obstructive pulmonary disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally balance, stoop, kneel, crouch and crawl; never climb; occasionally perform overhead reaching with his right arm; frequently use his right hand; cannot work on uneven surfaces and must avoid hazards. The claimant can perform unskilled work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born in 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability

onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).[1]

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2007, through the date of this decision (20 CFR 404.1520(g)).

(AR 26-32).

On November 9, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On December 17, 2012, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

---

[1] The record shows that Plaintiff completed the eleventh grade and did not graduate from high school.

# STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [the claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal of the ALJ's decision, arguing that the ALJ made errors in the credibility determination, the ALJ failed to properly evaluate the opinion evidence, the ALJ's residual functional capacity assessment contravenes Social Security Ruling 96-8p, and the ALJ failed to determine the proper region for available jobs at step five of the sequential analysis. The Court considers each asserted basis for remand in turn.

**A. Credibility**

Once the ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of the symptoms. 20 C.F.R. § 416.929(a). The ALJ must consider a claimant's statements about symptoms and how the claimant's symptoms affect his daily life and ability to work. *Id*. Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* When determining disability, the ALJ must weigh these subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)      The individual's daily activities;
(2)      Location, duration, frequency, and intensity of pain or other symptoms;
(3)      Precipitating and aggravating factors;
(4)      Type, dosage, effectiveness, and side effects of any medication;
(5)      Treatment, other than medication, for relief of pain or other symptoms;
(6)      Other measures taken to relieve pain or other symptoms;
(7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). When evaluating the record as a whole, the ALJ considers any information provided by treating or examining physicians and other persons about the factors and how they affect the claimant. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* § 404.1529(c)(1). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently

wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

First, the ALJ erred by discrediting Plaintiff with the observation that "there is no indication in the record of any significant pain or numbness after Plaintiff's surgery." (AR 30). Nothing could be farther from the evidence in the medical records.

On December 14, 2009, Plaintiff underwent a lumbar fusion at levels L4 and L5, performed by his treating physician Dr. Singh, a board certified orthopaedic spine surgeon. Two weeks later, on December 29, 2009, Plaintiff presented to Dr. Singh for follow up after a visit to the emergency room over the weekend for evaluation for deep vein thrombosis. He reported doing "very well" in relation to the pain over the weekend but reported some soreness in both legs and some swelling of the feet. (AR 518). He was able to walk with a cane and was wearing a brace. Dr. Singh noted some minor weakness of the anterior tib and EHL consistent with neurapraxia of the L5 nerve roots. Dr. Singh felt that the neurapraxia would slowly improve.

On January 5, 2010, Plaintiff reported to Dr. Singh that his back pain "is much better and not a problem." (AR 678). However, Dr. Singh also noted that Plaintiff was taking more Percocet than prescribed and was taking ibuprofen against Dr. Singh's advice. *Id*.

On January 12, 2010, Plaintiff presented to Dr. Singh for follow up. Plaintiff reported difficulty putting his shoes on and walking. He reported that his back pain was much better. The physical examination showed minimal swelling, full range of motion of both lower extremities, 5/5

strength at L2-S1, and negative straight leg raise bilaterally. Plaintiff's Percocet prescription was refilled and a TENS unit and a bone stimulator were prescribed.

On January 18, 2010, Plaintiff was evaluated by Dr. Kanuru at the request of Dr. Singh for treatment of pain and swelling in bilateral lower extremities. There was no numbness, tingling, or burning present. Plaintiff rated his pain at 8-9 on a scale of 0-10, with 0 indicating no pain and 10 indicating severe pain. Plaintiff reported that his pain was aggravated by standing and sitting for long periods of time. He reported that Percocet did not help his pain. Plaintiff told Dr. Kanuru that "the pain is so bad that he feels like 'ripping his leg off.'" (AR 524). Plaintiff described the pain as aching, stabbing, constant, and numbness, stated that the pain was aggravated by lying flat, climbing stairs, sneezing, and coughing, and stated that nothing helped to control the pain. After walking for ten minutes, his pain was a 10 on a scale of 0-10. On physical examination, Dr. Kanuru observed that Plaintiff was walking with a cane and had difficulty walking to the examination table, there was tenderness present with palpitations in bilateral lower extremities, there was 2+ pitting edema present over bilateral feet and ankles, knee reflexes were absent bilaterally, and the strength of bilateral knee flexors and extensors was 3/5. Plaintiff was admitted to the hospital for pain control.

On January 26, 2010, a follow up treatment note from Dr. Singh provides that the leg swelling had resolved because Lyrica was stopped. However, Plaintiff's back pain increased as a result. Other than some burning in his forefeet and a bit of numbness in his lower tibia on both sides, Plaintiff did not have leg pain. He was taking Percocet for the back pain. The physical examination was normal. It was noted that Plaintiff was using a TENS unit and trying to get a bone stimulator. Plaintiff also requested Neurontin instead of Lyrica to help with his back pain. The Percocet prescription was refilled as well.

On May 14, 2010, Plaintiff reported that he continued to have back pain and radiating pain down the left leg following the fusion surgery. Plaintiff reported numbness in the lateral aspect of the left shin and the medial site of the right calf. Plaintiff reported that the pain progressively worsened when he sat more than ten minutes, when he got up from a lying down position, or when sitting or standing for prolonged periods of time. Plaintiff's medications were noted as Zocor, Metroprolol, Tramadol, and Neurontin. Plaintiff was able to ambulate normally but he was uncomfortable while seated during intake. The physical therapist assessed a reduced active stability, muscle imbalance with shortened hamstrings, and poor upright positioning of the spine.

During a June 8, 2010 follow up visit with Dr. Singh, Plaintiff reported increasing pain in his left leg. He reported that the Percocet prescribed by Dr. Kanuru's office did not work but that Vicodin sometimes helped his pain. Dr. Singh refilled his Tramadol, gave him Motrin, and continued Neurontin. He also recommended an epidural shot with Dr. Kanuru.

The ALJ did not discuss any of this favorable evidence in his opinion, either in summarizing the medical evidence, weighing Plaintiff's credibility, or crafting the RFC. This failure alone requires remand because with an analysis of this evidence that supports Plaintiff's statements of debilitating pain, the Court cannot say that the ALJ's credibility determination is not patently wrong. *See Scrogham v. Colvin*, No. 13-3601, 2014 WL 4122051, at *10-11, — F.3d — , — (Aug. 27, 2014) (finding that the ALJ erred when she "identified pieces of evidence in the record that supported her conclusion that [Plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion").

The Commissioner attempts to remedy this omission by noting the other aspects of the ALJ's decision that support his finding that Plaintiff's impairments were not totally debilitating. First, the

ALJ noted "gaps" in treatment history, but notes only that in August 2009, Dr. Singh noted that he had not seen Plaintiff since January 2009. This statement does not undermine Plaintiff's credibility as the August 2009 visit predates Plaintiff's December 2009 surgery and the pain that he continued to experience after the surgery. Moreover, Plaintiff had a history of treatment for his back pain, including transforaminal epidural steroid injection at the level of L5 bilaterally on October 27, 2006, lumbar epidural steroid injection at the level of L5-S1 on January 12, 2007, transforaminal lumbar epidural steroid injection at the level of L5 bilaterally on June 13, 2007, and a transforaminal epidural steroid injection at the level of L5 bilaterally performed on February 1, 2008. And, most importantly, Dr. Singh wrote, in relevant part on August 25, 2009: "I have not seen him in a long time, since January 19th. He is doing okay. *He is having significant back pain radiating down his left leg*. He is walking in the office. *He is unable to sit down*. He also has some neck pain." (AR 370) (emphasis added). Dr. Singh gave him Ultram, sent him to Dr. Kanuru for injections in his neck and low back, and noted that Plaintiff was arranging his finances so he could have back surgery.

Second, the ALJ found that Plaintiff "was not interested in physical therapy," (AR 28), which the Commissioner mischaracterizes as a finding that Plaintiff "did not follow through with recommended treatments," (Def. Br. 9). The ALJ again presents an incomplete picture of the record. The record cited by the ALJ, dated September 1, 2009, provides that the treatment plan for Plaintiff's cervical spinal stenosis was a series of two injections a week apart and that, as for any physical therapy: "Patient is not interested in therapy at this time, *however he may consider after his injections*." (AR 284) (emphasis added). Nothing in this statement suggests that Plaintiff failed to follow through with recommended treatments. Also, this record deals with Plaintiff's cervical spine pain, whereas the fusion surgery he underwent in December 2009 was on his lumbar spine.

In the fifth sentence of the following paragraph of his decision, at the bottom of page 28, the ALJ again notes that Plaintiff stated that he was not interested in physical therapy but the ALJ does not cite a specific page in the record. However, there is citation after the second sentence of the paragraph to exhibit 6F, which is *all* of Dr. Singh's treatment records. The Court's review of those records reveals that, on November 3, 2008, Dr. Singh ordered physical therapy for Plaintiff's neck and shoulder as well as an MRI. (AR 354). On November 10, 2008, Dr. Singh again recommended physical therapy. The record then contains Plaintiff's physical therapy progress notes from Integrated Therapy Practice for the dates from November 17 through November 28, 2008, and December 15 through December 27, 2008. These records do not support a finding that Plaintiff failed to follow through with recommended therapy.

Third, the Commissioner points to the ALJ's reliance on the objective medical evidence to establish that Plaintiff's neck pain was not disabling. Again, Plaintiff's neck pain was only one aspect of his alleged impairments; his ongoing pain in 2010 was following his surgery in the lumbar region. Plaintiff's treatment records for pain associated with his lower back begin in September 2006.

Fourth, the Commissioner argues that the ALJ relied on clinical findings, "such as normal physical examinations that showed normal gait, no difficulty walking, and good grip strength to determine that Plaintiff's claims of debilitating symptoms were not fully credible." (Def. Br. 10) (citing (AR 28)). However, the ALJ's decision itself provides only that "[u]pon exam, his gait was normal and had no difficulty walking to the examination table," (AR 28), and offers no citation to the record other than the general citation to Dr. Singh's records in Exhibit 6F. The Court's review of the records shows that there is notation by Dr. Singh on *October 23, 2006*, of "normal gait

coordination," (AR 326), and a notation by Dr. Kanuru on *October 27, 2006*, of "gait is steady" and "patient has no difficulty walking to the examination table," (AR 329). These notes from 2006 do not undermine Plaintiff's credibility as to his pain in 2009 and 2010 in light of the contemporaneous evidence of record.

Finally, the Commissioner notes the ALJ relied on the fact that Dr. Sands, the state agency reviewing physician, found Plaintiff's impairments compatible with light work. (Def. Br. 10) (citing (AR 31)). However, the ALJ's reasoning for adopting Dr. Sands RFC assessment is because it is "consistent with the claimant's considerable improvement in symptoms following surgery that are well-document in Exhibit 16F." (AR 31). This finding is undermined by the ALJ's failure to discuss the favorable evidence contained in those records, as discussed at length above.

None of these reasons advanced by the Commissioner cures the ALJ's error in not addressing the favorable treatment records when considering Plaintiff's credibility.

Plaintiff also argues that the ALJ erred by finding him less credible because he smoked while suffering from COPD. (AR 29). The Commissioner does not address this argument. The record cited by the ALJ for this finding is a May 19, 2009 xray report with a clinical history of "Shortness of breath and productive cough. Smoker." (AR 206). Plaintiff points to three records showing that he subsequently stopped smoking just prior to his December 2009 surgery. On December 8, 2009, he had quit smoking because of his upcoming surgery, (AR 391); on December 29, 2009, it was noted that he was "doing well with not smoking," (AR 518); and on January 1, 2010, he was still not smoking, (AR 639). Although Plaintiff does not cite the record, the January 26, 2010 treatment record from Dr. Singh shows that Plaintiff was still not smoking. (AR 682). The ALJ did not acknowledge these records or discuss how they affect Plaintiff's credibility. But, the ALJ did cite

evidence that the pulmonary function test in November 2009 showed moderate obstruction but readings above listing levels, (AR 29), a fact that Plaintiff does not acknowledge. Yet, later in a summary of his credibility determination, the ALJ wrote: "The claimant has pulmonary insufficiency, yet he smokes." (AR 30). On remand, the ALJ shall clarify his understanding of Plaintiff's smoking history and its impact on his assessment of Plaintiff's credibility.

Plaintiff also argues that the ALJ erred by finding him not credible, in part, based on his characterization of the record as showing sparse treatment in the previous two years. The Commissioner does not address this argument. Plaintiff faults the ALJ for making this conclusion without exploring the underlying reasons for the treatment frequency, citing three records to suggest that Plaintiff's lack of financial resources were at issue. Plaintiff cites a bill for $1915, dated October 5, 2009, but it is not clear from the record that Plaintiff owed that balance. Plaintiff cites an August 25, 2009 statement from Dr. Singh that Plaintiff was getting his finances together for surgery; this fact does not indicate that he could not afford non-surgery, routine treatment. Finally, Plaintiff cites a March 20, 2012 letter from his attorney asking that his administrative hearing be expedited because Plaintiff could not work and was "facing eviction." (AR 194). Although it is not at all clear that Plaintiff was not getting treatment at any point because of financial difficulties, because the case is being remanded for other reasons, on remand, the ALJ shall clarify whether he finds Plaintiff less credible due to infrequent treatment, and, if so, the ALJ shall explore with Plaintiff the reasons for the frequency of treatment.

Finally, Plaintiff faults the ALJ for not considering all the factors listed in SSR 96-7p. The Commissioner does not address this argument. First, Dr. Sands opined that Plaintiff's symptoms were credible and "consistent with [the medical evidence of record] in file." (AR 571). While the

ALJ gave great weight to Dr. Sands' RFC determination of less than the full range of light work, the ALJ did not discuss Dr. Sands' credibility finding. This is especially troubling in light of the ALJ's omission of the favorable evidence in the treatment record. On remand the ALJ shall discuss Dr. Sands' credibility opinion. *See* 96-7p, at *8 ("Therefore, if the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review must consider and weigh this opinion of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 and must explain the weight given to the opinion in the decision.").

Plaintiff also argues that the ALJ failed to follow the requirements of SSR 96-7p because the ALJ did not assess the observations of the agency employee who took Plaintiff's application that, according to Plaintiff, he "had difficulty with concentrating and the employee had to keep him focused." (Pl. Br. 20) (citing (AR 140)). Plaintiff mischaracterizes the employee's exact notation, which was: "had to keep him focused–had a tendency to ramble–cooperative and pleasant." (AR 140). The ALJ did not err on this point.

However, the ALJ did err by not discussing Plaintiff's activities of daily living in the context of the credibility determination, as required by SSR 96-7p. On remand, the ALJ shall do so. *See Zurawski*, 245 F.3d at 887.

For the foregoing reasons, the Court remands this matter for a proper credibility determination.

### B. Evaluation of Medical Opinion Evidence

An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p, 1996 WL 374184 (Jul 2, 1996); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875.

The factors listed in paragraphs (c)(2)(i) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. § 404.1527(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). Courts have acknowledged that a treating physician is likely to develop a rapport with his or her patient and may be more likely to assist that patient in obtaining benefits. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010);

*Schaaf*, 602 F.3d at 875; *Skarbek*, 390 F.3d at 503. The ALJ cannot pick and choose the evidence that favors his final decision; rather, the ALJ must articulate his analysis well enough for an appellate court to follow and review his reasoning. *Diaz*, 55 F.3d at 307.

On April 13, 2010, Dr. K. Singh, a board certified orthopaedic spine surgeon and Plaintiff's treating physician, completed a form titled "Medical Opinion Re: Ability to Do Work-Related Activities," opining that Plaintiff's limitations included lifting and carrying less than ten pounds on an occasional basis; sitting less than two hours total in an eight-hour workday; standing and walking less than two hours total in an eight-hour workday; the need to change positions at least every twenty minutes; the need to lie down at unpredictable intervals during a work shift; the need to avoid all exposure to hazards; never climbing ladders, kneeling, or balancing; and likely being absent more than three times monthly. (AR 667-69). Thus, Dr. Singh limited Plaintiff to less than sedentary work. At the end of the form, Dr. Singh checked the box "no" in response to the question as to whether Plaintiff could perform full-time work.

The ALJ rejected the opinion of Dr. Singh that Plaintiff is unable to perform full-time work as inconsistent with the treatment notes, with Dr. Singh's own notes, and because the opinion that Plaintiff is "unable to work" is a determination reserved for the Commissioner. In support, the ALJ discussed several pieces of evidence. The ALJ discussed Dr. Singh's treatment notes that suggest Plaintiff's symptoms improved. The ALJ cites the January 5, 2010 treatment note to discredit Dr. Singh by noting that, although Dr. Singh told Plaintiff he should lift only minimal weight such as a cup of coffee, he was lifting heavier objects around the house. This comment appears to mean only that Plaintiff was not following orders and not that he should have been doing that lifting or that it was not causing pain. The ALJ also pointed to conflicting opinion evidence by the state agency

physician, Dr. Sands, who found that Plaintiff was capable of less than the full range of light work, which was the RFC adopted by the ALJ. However, as with the ALJ's review of the treatment records, Dr. Sands' review of Dr. Singh's treatment records notes only the positive findings and ignores Plaintiff's continued complaints of back pain and treatment for pain management in the winter and spring of 2010.

The Commissioner points to notations from the January 5, 2010 treatment note that Plaintiff reported that his legs were better and his "back pain, according to him, is much better and not a problem." (Def. Br. 8) (citing (AR 678)). However, the ALJ does not cite this fact. Perhaps that is because Dr. Singh later explained in that treatment note that he could not determine whether Plaintiff's symptoms were better because he was taking Lyrica, because he was taking increased Percocet, or because he was healing.

The Commissioner also cites a January 12, 2010 treatment note, which again, the ALJ did not cite, for the statement that "[h]is back pain is much better." (AR 681). The Commissioner notes that the ALJ cited a January 26, 2010 treatment record to show that Plaintiff's legs were better, but, again, the ALJ noted only the benign findings at the expense of the statements such as "[h]is back pain is increased because he is off Lyrica," and "[h]e is requiring more Percocet because of the increase in back pain." (AR 682).

The Commissioner argues that Dr. Singh's opinion conflicted with Plaintiff's own testimony, noting that Dr. Singh opined that Plaintiff could not lift ten pounds but that Plaintiff testified that he could lift a grocery bag that he estimated weighed ten to fifteen pounds. (Def. Br. 8) (citing AR 58). First, the ALJ did not include this analysis in his decision. Second, it is not clear how Plaintiff's

testimony is inconsistent with the ALJ's finding regarding Plaintiffs's regular lifting ability in the work setting.

The ALJ's rejection of Dr. Singh's opinion on the basis that he opined on an issue reserved to the Commissioner is misplaced because, although Dr. Singh answered "no" to the yes/no question on the form as to whether Plaintiff was capable of working full time, Dr. Singh also completed the remainder of the form setting forth specific functional limitations noted above and indicated that the limitations were based on the medical findings of "status post anterior-posterior spine fusion" and "patient is taking pain medication Ultram 50mg." (AR 669). Regardless, the Seventh Circuit Court of Appeals has reiterated that even opinions on the ultimate issue of disability must be properly considered. *See Roddy*, 705 F.3d at 638 (citing 20 C.F.R. § 404.1527(d)(2)-(3); *Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2002); *Barnett*, 381 F.3d at 669).

More importantly, the ALJ erred by selectively focusing on positive comments following Plaintiff's December 2009 lumbar fusion surgery and by completely ignoring the numerous notations of Plaintiff's ongoing pain and difficulties following his back surgery. These findings that support Dr. Singh's opinion are set out in detail in the previous section regarding Plaintiff's credibility and include the emergency room visit in late December 2009; the January 18, 2010 evaluation by Dr. Kanuru at which Plaintiff rated his pain as 8-9 on a scale of 0-10, with 0 indicating no pain and 10 indicating severe pain, reported that his pain was aggravated by standing and sitting for long periods of time, reported that Percocet did not help his pain, and told Dr. Kanuru that "the pain is so bad that he feels like 'ripping his leg off,'" (AR 524); on January 18, 2010, Plaintiff's back pain increased as a result of discontinuing Lyrica; on May 14, 2010, Plaintiff reported continued back pain and radiating pain down the left leg, numbness in the lateral aspect of the left shin and the

medial site of the right calf, and that the pain progressively worsens when he sits more than 10 minutes, when he gets up from a lying down position, or sitting and standing for prolonged periods of time; on June 8, 2010, Plaintiff reported increasing pain in his left leg, that Percocet did not work, but that Vicodin sometimes helped his pain. As noted in the previous, section, the ALJ discussed none of this evidence, including only the evidence that supported his RFC determination.

Remand is required for a proper assessment of the Dr. Singh's April 2010 opinion.

## C. Residual Functional Capacity

The RFC, which is at issue at steps four and five of the sequential evaluation, is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The evidence relevant to the RFC determination includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. SSR 96-8p, at *5. The ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. In addition, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." *Id*.

Plaintiff argues that the ALJ violated the mandate of Social Security Ruling 96-8p by failing to discuss why his reported symptom-related functional limitations and restrictions cannot

reasonably be accepted as consistent with the medical and other evidence. *See* SSR 96-8p, at *7. The symptom-related functional limitations that Plaintiff alleges the ALJ failed to discuss are Plaintiff's need for a sit/stand option, his limited walking ability, his carpal tunnel difficulties, and his breathing restrictions. In her response brief, the Commissioner argues generally that the ALJ properly determined Plaintiff's RFC for a narrowed range of light work and then dedicates one sentence to each of Plaintiff's specific arguments. While the Court generally agrees with the Commissioner's assessment that the ALJ considered many of the factors and much of the evidence, remand is required because the ALJ did not build a logical bridge between the evidence and the RFC for certain impairments.

1.    *Sit/Stand Option*

Plaintiff testified that he needed to continually change positions and was unable to sit or stand for more than ten to fifteen minutes at a time. On January 18, 2010, Dr. Kanuru noted that Plaintiff reported that his pain is aggravated by standing and sitting for long periods of time. (AR 524). On January 18, 2010, Plaintiff was admitted to the hospital for pain management, and Plaintiff reported that his pain was aggravated by sitting or standing for long periods of time. (AR 527). In his April 13, 2010 opinion, Dr. Singh noted that Plaintiff needs to alternate between sitting, standing, and walking to relieve his discomfort and that Plaintiff can sit for 20 minutes before needing to change position. (AR 667-68). Although the ALJ gave Dr. Singh's opinion no weight, the Court has now found that the ALJ's reasoning was flawed because the ALJ failed to consider evidence of Plaintiff's ongoing pain after surgery. Moreover, at the hearing, the ALJ noted that Plaintiff had been alternating between sitting and standing: "What you've done here is sitting and standing, so - - ." (AR 59). Plaintiff responded, "Well, as long as I keep shifting, I'm okay." *Id.*

The ALJ did not include a discussion of Plaintiff's need for a sit/stand option, likely because the ALJ did not find Plaintiff fully credible and gave no weight to Dr. Singh's April 13, 2010 opinion. Once the ALJ has properly assessed Plaintiff's credibility and properly weighed Dr. Singh's opinion, the ALJ must consider Plaintiff's need for a sit/stand option, if appropriate. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (discussing the failure to conduct a full discussion as required by SSR 96-8p). This analysis is critical because the vocational expert testified that there would be no jobs available if Plaintiff needs a sit and stand option every ten minutes. (AR 59-60).

In her response brief, the Commissioner notes that the ALJ pointed to evidence that Plaintiff's back pain improved after surgery. (Def. Br. 5). As discussed in the credibility determination above, those findings by the ALJ are fraught with error due to the omission of favorable evidence.

2.    *Standing and Walking Limitations*

Plaintiff testified that his overall standing and walking abilities were significantly limited. As noted, he testified that he can only stand for short periods of time. He testified that, although his back surgery allowed him to walk on even ground for approximately 30 minutes, he could not walk on uneven ground. On January 12, 2010, Dr. Singh noted that Plaintiff was having difficulty walking. On January 26, 2010, Plaintiff continued to have pain in his back and was walking with a cane. Dr. Singh opined on April 13, 2010 that the maximum Plaintiff could stand and walk in a day was less than two hours. Light work requires standing and walking six hours in an eight-hour workday. Although the ALJ included a restriction in the RFC that Plaintiff cannot work on uneven surfaces, the ALJ did not discuss Plaintiff's standing and walking limitations, again likely because

of the credibility determination and the weight he gave to the treating physician opinion. On remand, the ALJ is directed to discuss Plaintiff's standing and walking limitations.

*3.      Hand Limitations*

The ALJ found that Plaintiff had severe carpal tunnel. Plaintiff had surgery on the right hand but not on the left, and he testified that he continued to have problems with his left hand. (AR 50). The ALJ noted the nerve conduction study results that demonstrated bilateral moderately severe carpal tunnel syndrome with the left hand worse than the right hand on motor testing. (AR 29) (citing (AR 211-29)). Yet, the ALJ included limitations in the RFC for the right hand only with no explanation as to why limitations were not included for the left hand. In addition, the ALJ found that Plaintiff could frequently use his right hand with no explanation of the medical evidence. Both jobs that the ALJ found Plaintiff could perform require frequent grasping. The ALJ failed to build a logical bridge between the evidence of carpal tunnel syndrome and the RFC. Remand is required on this basis. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011).

*4.      Breathing Difficulties*

The ALJ found that Plaintiff had severe chronic obstructive pulmonary disease ("COPD") but set forth no associated limitations in the RFC. The ALJ did take the COPD into consideration by eliminating the housekeeping jobs identified by the vocational expert "to ensure that the claimant is not exposed to pulmonary irritants," (AR 29), but did not cite any evidence of record for this decision. By failing to include the limitation in the RFC itself, the ALJ did not present a hypothetical to the vocational expert with Plaintiff's full range of functional limitations. It is not clear from the vocational expert's testimony or the evidence of record that a limitation on exposure to pulmonary

irritants would not also limit the availability of the two remaining jobs identified by the vocational expert. Remand is required for the ALJ to include a discussion of whether limitations flowing from Plaintiff's COPD must be included in the RFC, and if they are, to pose new hypotheticals to the vocational expert that include those limitations. *See O'Connor-Spinner*, 627 F.3d at 619 ("Our cases, taken together, suggest that the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Indornato v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the [vocational expert] must incorporate all of the claimant's limitations supported by medical evidence in the record.").

### D. Determination of the Region

Finally, Plaintiff argues that the ALJ failed to determine whether work "exists in significant numbers either in the region where [he lives] or in several other regions of the country." 20 C.F.R. § 404.1566(a); *see also* 42 U.S.C. § 423(d)(2)(A).

The cited regulation provides:

> (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether--
> (1) Work exists in the immediate area in which you live;
> (2) A specific job vacancy exists for you; or
> (3) You would be hired if you applied for work.

20 C.F.R. § 404.1566(a). The cited statute provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect

to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In this case, the ALJ asked the vocational expert at the hearing to define the "region" he was using, and the vocational expert's response was "Indiana." (AR 56). The ALJ then found that "jobs exist in significant numbers in the national economy that the claimant can perform." (AR 31) (citing 20 C.F.R. §§ 404.1569, 404.1569(a)). Specifically, the ALJ relied on the vocational expert's testimony to find that Plaintiff could perform the requirements of the jobs of clerical router, for which there are 800 jobs in Indiana and 58,000 jobs nationally, and collator operator, for which there are 700 jobs in the region and 28,000 jobs nationally. (AR 32).

Without citation to law, Plaintiff argues that the ALJ abdicated to the vocational expert his responsibility to make a factual finding of the "region" where Plaintiff lives. Plaintiff does cite a decision in the Northern District of Indiana rejecting a challenge that the identified jobs must be within a certain commuting distance from the claimant's residence, and Plaintiff does not make that same argument in this case. *See Landing v. Astrue*, 3:11-CV-404, 2013 WL 1343864, at *17-18 (N.D. Ind. Apr. 3, 2013). However, Plaintiff still argues that a claimant should not be denied benefits based on limited jobs outside of the region where he lives. 20 C.F.R. § 404.1566(b).

The Commissioner bears the burden of showing that there are a significant number of jobs that the claimant is capable of performing. 20 C.F.R. § 404.1560(c)(2). In this case, the ALJ relied on the vocational expert's testimony to determine the available jobs in both Indiana and nationally. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("The Commissioner typically uses a vocational expert ("VE") to assess whether there are a significant number of jobs in the national

economy that the claimant can do."). Plaintiff offers no law in support of his argument that an ALJ must explicitly define the "region" beyond the testimony given by the vocational expert and relied on by the ALJ. Nor does the Plaintiff offer law or reasoning that a state does not satisfy the definition of "region" for purposes of the statute. Other vocational experts have defined the "region" as the state in which the claimant lives. *See Byers v. Colvin*, No. 3:13-CV-199, 2014 WL 3818241, at *7 (N.D. Ind. July 31, 2014) (Indiana); *Alford v. Colvin*, Case No. 13-1148, 2014 WL 1716485, at *2 (N.D. Ill. May 1, 2014) (Illinois); *Schadenfroh v. Colvin*, No. 1:13-CV-223, 2014 WL 1260123, at *12 (S.D. Ind. Mar. 27, 2014) (Indiana); *Souders v. Colvin*, No. 4:12-CV-156, 2013 WL 6154570, at *2 (S.D. Ind. Nov. 20, 2013) (Indiana); *Walski v. Colvin*, 2013 WL 5563986, at *10 (W.D. Wis. Oct. 8, 2013) (Wisconsin). The regulation provides that the available jobs do not have to be in the immediate area in which the claimant lives. *See* 20 C.F.R. § 404.1566(a)(1). Remand is not required on this basis.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief [DE 11], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 3rd day of September, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record